18

United States District Court

~~Western~~ District of Michigan
Eastern

Charles Haydon II
    Plaintiff

Case: 2:24-cv-13423
Assigned To : McMillion, Brandy R.
Referral Judge: Ivy, Curtis, Jr
Assign. Date : 12/20/2024
Description: PR HAYDON
V.HUNGERFORD ET AK (MC)

VS.
P/C Pace
Officer Hungerford
Officer Mayrick
Officer Frank
Officer/SGt Hahn
SGt. McKinzy
SGt. Jon Doe 1
SGt. Jon Doe 2
Jon Doe 3
Lt. Gagey
Jane Doe 1
    Defendants,
        Sued in their individual &
official capacities

Jury Demand, Complaint
for Money Damages

## I. Jurisdiction

Plaintiff brings this lawsuit pursuant to 42 U.S.C. 1983. This court has jurisdiction under 28 U.S.C. 1331 & 1343.

## II. Venue

The ~~Western~~ Eastern District Court of Michigan is the appropriate venue under 28 U.S.C. 1391(b)(2)

## III. Parties

Plaintiff Charles Hayden II was at all times relevant to this action a prisoner incarcerated Kinross Correctional Facility & at Newberry Correctional Facility.

3.

- Defendant Jane Doe 1 was at all times relevant to this action a Nurse at Kinross Correctional Facility & was acting under the color of federal & state law. By statue the nurse is responsible to treat Prisoners to the best of her ability.

- Defendant Hungerford was @ all times relevant to this action the corrections officer at Kinross Correctional Facility & was acting under the color of federal & state law. By statue the corrections officer is responsible for the safety & security of Prisoners ~~bees~~ housed in officer Hungerford assigned unit. Defendant is being sued in his individual capacity.

- Officer Mayrick was @ all times relevant to this action the corrections officer at the Kinross Correctional facility. By statue the corrections officer is responsible for ensuring the safety & well-being of Prisoners under his supervision. He is being sued in his individual capacity

4.

- Officer Frank was @ all times relevant to this action the corrections officer at the Kinross Correctional Facility. By statue the corrections officer is responsible for ensuring the safety & well-being of prisoners under his supervision. He is sued in his individual capacity.

- Officer/Sargent Hahn was @ all times relevant to this action the corrections Sargent at the Kinross Correctional facility. By statue the Sargent is responsible for ensuring the safety & security of prisoners under her supervision. She is being sued in her individual & official capacity.

- Acting Sargent McKinzy was @ all times a Sargent of Security & Safety at the Kinross Correctional facility. He was in charge of plaintiff's assigned housing unit & was responsible to ensure the safety of plaintiff. He is sued in his individual & official capacity.

- Sargent Jon Doe 2 was @ all times a Sargent of Security @ the Kinross Correctional Facility. He was the unit commander & was responsible to ensure the safety of Plaintiff. He is sued in his individual & official capacity.

- Sargent Jon Doe 3 was @ all times a Sargent of security at the Kinross Correctional Facility. He was the unit commander & was responsible to ensure the safety of Plaintiff. He is sued in his individual & official capacities.

- Lt. Gagey was @ all times the Lt. of Safety & security at the Kinross Correctional Facility. He was the shift commander & was responsible to ensure that officers & sargents follow Policy Directives & operating Procedures & was responsible to ensure the safety of the Plaintiff. He is sued in his individual & official capacities.

P.C./Unit Manager Pace was @ all times the unit manager/Prisoner Consoler @ the Kinross Correctional Facility. He was the unit manager & was responsible for handling Prisoner conflicts, & to help assist Prisoners with issues at the facility. He is sued in his individual & official capacities.

At all times relevant to the events described herein, the defendants have acted & continue to act under color of state law.

IV. Exhaustion OF Administrative Remedies

Plaintiff has exhausted all available administrative remedies using the prisoner grievence system.

V. Factual Allegations

Because Plaintiff has not yet had a chance to conduct discovery, Plaintiff does not know all of the facts

7.

in this case — Particularly facts in the defendants control & Possession, facts plaintiff intends to bring up @ the time of descovery.

(1) On or about 8-1-2023 @ about 10:00 p.m officer Hungerford came to plaintiff's room & told him he had to move from his bottom bunk to a top bunk. From D-2-13 (Bottom Bunk) to D-2-10 (Top Bunk).

(2) Plaintiff let officer Hungerford know that he had a bottom bunk detail, & due to medical conditions he could not be on a top bunk.

(3) Plaintiff informed officer Hungerford that he could not climb ladders or go use steps, stairs, etc.

(4) Officer Hungerford left then returned approximately five minutes later & said they could not find a copy of Plaintiff's detail on file & asked plaintiff if he had a copy of his bottom bunk detail.

⑤ Plaintiff Provided officer Hungerford with a copy of the bottom bunk detail & showed the officer Plaintiff's foot.

⑥ Officer Hungerford left with a copy of the bottom bunk detail provided by Plaintiff.

⑦ Approximately five minutes later officer Hungerford returned & said that Plaintiff's Detail had expired on the day in question which was 7-21-23.

⑧ On this same day, 7-21-23 plaintiff had a health care appoitment @ which time Plaintiff spoke with the healthcare provider about renewing his bottom bunk detail & getting a Special Shoe Detail.

⑨ The healthcare provider, Jane Doe 1 said she would renew Plaintiff's bottom bunk/ no Ladders/ no Stairs Detail & refer him to an orthpidect specialist.

(9)

10. When C.O. Hungerford returned & said Plaintiff's detail had expired, Plaintiff explained he had a healthcare appointment ~~earlier that same day~~ 07-7-21-23 & the healthcare Provider said she renewed Plaintiff's bottom bunk, no Ladders, no steps detail.

11. When C.O. Hungerford said he "didn't give a shit about Plaintiff's Medical condition" Plaintiff asked to speak with the Shift Commander.

12. At Approximately 10:25 p.m. officer Mayrick came to plaintiff's bunk & told plaintiff to report to the control center.

13. Plaintiff Reported to the control Center as ordered & was told "have a seat". Plaintiff complyed.

14. Approximately 20 minutes later, acting Sargent McKinzy & Two other Sargents (Jon Doe 2 & Jon Doe 3) came over to Plaintiff.

(15) Sargent Jon Doe 2 asked what was going on, so plaintiff explained exactly what had happened from healthcare appointment ~~~~~~~~ on 7-21-23 to the current time.

(16) Once again Plaintiff explained the need for a bottom bunk, the nature of his injuries that prevent him from climbing Ladders & steps.

(17) Plaintiff offered to show Acting Sargent McKinzy, & Jon Doe 1 & 2 his foot. All three Sargents said "no, that's ok, We believe you."

(18) All three Sargents went back into the office and returned 5 minutes later & said that Lt. Gagey said that plaintiff had to move, regardless of medical issues, & plaintiff should speak to PC Pace the following day.

(19) Sargent Jon Doe 2 ~~~~~ told Plaintiff that 3RD. shift does not make moves unless it has to do with security issues, & that the move was made by 2nd. shift & Plaintiff needed to talk to them.

20) Third shift officers also said plaintiff should raise the issue with the unit Manager the following day, & that the unit manager could move plaintiff back down & Lt. gagey stated he would sent P/C Pace an email about the issue of being on a top bunk, & that plaintiff should kite healthcare about renewing his bottom bunk detail.

21) Plaintiff returned to his assigned housing unit & moved to the Top bunk D-2-10 but slept at the table all night.

22) The following day on 8-2-23 @ approximately 7 or 8 A.M. Plaintiff went to the unit Manager Pace to discuss the issues of being on a top bunk, & how the medical care Provider forgot to renew Plaintiffs bottom bunk, no Ladders, no steps detail.

23) After explaining plaintiffs medical issues to the Unit Manager/PC Pace, Pace told the Plaintiff there was nothing he could do & that plaintiff needed to kite healthcare.

Case 2:25-cv-00037-SJB   ECF No. 1, PageID.12   Filed 12/20/24   Page 12 of 18

12.

24) Plaintiff then told Pace a second time that Plaintiff could not climb Stairs, Ladders, therefore the Direct order to Lock on a Top bunk was a danger to Plaintiff's health & safety.

25) At that time Plaintiff told Pace " I guess this means I'll be Sleeping @ the table again" until he heard back from healthcare.

26) That is when Pace told Plaintiff "if (he) was not in that top bunk @ count time Plaintiff would get a class 1 'out of Place' ticket & an attempted escape.

27) At approximately 10:55 A.M. on 8-2-23 C.O. Frank called "5 minutes till count, be on your bunks." @ which time Prisoner Kent # 494511 helped Plaintiff get into the top bunk he was ordered to be in @ count time by Pace & Frank.

28) After both corrections officers made their count rounds (Approx. 11:05 A.M.) Plaintiff tried to get down from the Top bunk, Stepping down on the chair, & as the Plaintiff Stepped down, the chair →

28) tipped over & the plaintiff fell to the floor landing on his left wrist & elbow, & back, also hitting his head on the table leg & unsure what else, possibly the floor.

29) It was @ this time another prisoner went & told officer Frank what had happened.

30) Approx. Two minutes later officer Frank came to Plaintiff's cube & said "Haydon, what are you doing", @ which time plaintiff responded "I fell."

31) Officer Frank walked away & came back a few minutes later with officer Hahn.

32) Officer/Sargent Hahn showed up with a wheelchair & took plaintiff to healthcare where plaintiff was seen by nurse Jane Doe 2.

33) Nurse Jane Doe 2 told plaintiff that his wrist & elbow was most likely bruised & scheduled plaintiff for X-Rays.

34) Nurse Jane Doe 2 also checked plaintiff's back & head, had him stand & lift his legs & asked him to turn his right foot foward @ which time Plaintiff told her he couldn't Due to an injury in 1997 & that was the reasoning for the bottom bunk, no ladders, no steps detail.

35) Nurse Jane Doe 2 Gave the Plaintiff a 60 mg. shot of tortamatall for his back.

36) At this time nurse Jane doe 2 informed Plaintiff that she sees that there's 3 screws & 2 plates in his foot, @ which time Plaintiff explained that that's what he been trying to tell Prison officials all along.

37) At this time Nurse Jane Doe 2 Gave Plaintiff ~~------~~ a detail for an ace bandage, wheelchair, & bottom bunk detail for the next 2 days.

38) At 4 p.m. Plaintiff sent a kite to health care to get his bottom bunk detail renewed & health care replyed that on 8-3-23 Plaintiff was seen about that issue the day before on 8-2-23.

(39) On 8-3-23 unit manager Pace called plaintiff into his office to sign off on a healthcare kite from 7-26-23.

(40) Upon entering PC Pace's office Pace stated he did not understand why plaintiff was moved in the first place, that it was "obvious that (plaintiff's) foot was messed up."

(41) On 8-4-23 Plaintiff had a healthcare appointment & seen nurse Jon Doe 4.

(42) RN Jon Doe 4 checked Plaintiff's wrist & back by touching where it hurt, @ which time Plaintiff let him know that the pain was spreading into Plaintiff's fingers & across his lower back & up to the middle of his shoulder blades.

(43) RN Jon Doe 4 wrapped Plaintiff's wrist in a new ace bandage & gave him more ibprophen along with other medicine/proscribtions & set a follow up appoitment for a week away.

44) Plaintiff then asked RN Jon Doe 4 about his bottom bunk detail @ which time he gave Plaintiff another temporary detail until 8-16-23 & told Plaintiff he needed to see his Provider for a permanent detail.

45) X-Rays were never ordered, or, were ordered but were never Done.

46) When X-Rays were taken they were only taken of plaintiff's wrist, not of his elbow or back Like Plaintiff was told he would have done.

47) In october of 2023 Plaintiff was transfered to another facility (URF) where he never received any follow up appoitments.

48) In March of 2024 Plaintiff was transfered to New Berry Correctional Facility where he kited healthcare asking to see about his wrist & elbow as he was still in pain & Put healthcare on notice that X-Rays of back & elbow were never taken as they were allegedly ordered.

49) At this time Plaintiff was told that additional X-Rays were never ordered.

50) The Healthcare Provider @ New Berry wanted Plaintiff to take a Steroid & Layed him in for 30 days & told him if the Steroid didn't work then they would order ~~additional~~ additional X-Rays.

51) The Steroids Did not work so Plaintiff Kited healthcare again about his ongoing problem & they responded by saying "no follow up was Scheduled, to this day Plaintiff's wrist, elbow, & back is still hurting from falling from the Top bunk.

Defendants failed To Protect Plaintiff & were Deliberately indifferent to Plaintiff's serious medical needs/condition(s).

I swear under Penalty of Perjury that the foregoing is true & correct to the best of plaintiffs ability.

         X _CHarles HayDon II_

Date

         X _Charles Haydon II_



Charles Haydon II 218145
Jackson Cotton Facility
3500 N. Elm Road
Jackson, MI 49201

United States
Eastern District Court
c/o Office of the Clerk
231 W. Lafayette
Detroit, MI 48226