UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CHARLES HAYDON,

               Plaintiff,

v.

UNKNOWN PACE et al.,

               Defendants.

_____/

Case No. 2:25-cv-37

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Jane Doe #1, Mayrick, Frank, and Hahn. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Hungerford, McKinzy, Jon Doe #2, Jon Doe #3, Gagey, and Pace: Plaintiff's official capacity claims and Plaintiff's Eighth Amendment claims related to the provision of medical care following Plaintiff's fall. Plaintiff's Eighth Amendment claims against Defendants Hungerford, McKinzy,

Jon Doe #2, Jon Doe #3, Gagey, and Pace for deliberate indifference to Plaintiff's need for a bottom bunk assignment remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following KCF staff in their individual and official capacities: Nurse Jane Doe #1, Corrections Officers Unknown Hungerford, Unknown Mayrick, and Unknown Frank; Sergeants Unknown Hahn, Unknown McKinzy, Jon Doe #2, and Jon Doe #3; Lieutenant Gagey; and Unit Manager/Prisoner Counselor Unknown Pace.

Plaintiff alleges that he suffers from a foot injury that includes three screws and two plates in Plaintiff's foot and renders Plaintiff incapable of climbing ladders and stairs. (Compl., ECF No. 1, PageID.10, 14.) On or about August 1, 2023, Defendant Hungerford entered Plaintiff's room and told Plaintiff that Plaintiff would need to move from the bottom bunk to the top bunk. (*Id.*, PageID.7.) Plaintiff told Defendant Hungerford about his medical condition that prevented him from being able to climb ladders, steps, and stairs and be on a top bunk, and informed Defendant Hungerford of his bottom bunk detail. (*Id.*) Defendant Hungerford left Plaintiff's room and returned moments later asking for a copy of Plaintiff's medical detail. (*Id.*) Plaintiff provided Defendant Hungerford with a copy of the medical detail and Defendant Hungerford again left. (*Id.*, PageID.8.)

When Defendant Hungerford again returned with Plaintiff's medical detail, Defendant Hungerford noted that Plaintiff's bottom bunk detail had expired on July 21, 2023. (*Id.*) Plaintiff informed Defendant that he had a medical appointment with Defendant Jane Doe #1 on July 21,

2023, and Defendant Jane Doe #1 told Plaintiff that she would renew Plaintiff's medical detail. (*Id*., PageID.9.) Defendant Hungerford told Plaintiff that he "didn't give a shit about Plaintiff's medical condition." (*Id*.) Plaintiff asked to speak with the shift commander. (*Id*.)

That evening at approximately 10:25 p.m., Defendant Mayrick retrieved Plaintiff from Plaintiff's bunk and told Plaintiff to report to the control center. (*Id*.) Plaintiff sat at the control center for approximately 20 minutes until Defendants McKinzy, Jon Doe #2, and Jon Doe #3 came to speak with him. (*Id*.) Plaintiff explained his medical condition and need for a bottom bunk to Defendants McKinzy, Jon Doe #2, and Jon Doe #3. (*Id*., PageID.10.) These Defendants told Plaintiff that they believed him and went to the office. (*Id*.) When they returned, they told Plaintiff that Defendant Gagey told them that Plaintiff needed to move to a top bunk regardless of medical issues and that Plaintiff should speak with Defendant Pace the following day. (*Id*.) Defendant Jon Doe #2 further explained that the move was made by second shift, and third shift does not make moves unless for security reasons. (*Id*.) "Third shift officers" told Plaintiff that he should raise the issue with Defendant Pace and that Defendant Pace could move Plaintiff. (*Id*., PageID.11.) They also told Plaintiff that Defendant Gagey said that he would email Defendant Pace about the issue and that Plaintiff should send a kite to healthcare about renewing his medical detail. (*Id*.) Plaintiff returned to his assigned housing unit and moved to the top bunk but slept at a table throughout the night. (*Id*.)

The next day, August 2, 2023, Plaintiff spoke with Defendant Pace about his need for a bottom bunk and that Defendant Jane Doe #1 forgot to renew his medical detail. (*Id*.) Defendant Pace told Plaintiff that there was nothing that he could do and that he needed to send a kite to healthcare. (*Id*.) When Plaintiff again told Defendant Pace that he could not climb ladders or stairs and that ordering Plaintiff to climb was a threat to his health and safety, Defendant Pace told

Plaintiff that if Plaintiff was not in the top bunk at count time, he would issue Plaintiff a class I misconduct charge. (*Id*., PageID.12.)

Later that day, Defendant Frank called "5 minutes till [sic] count." (*Id*.) Prisoner Kent then helped Plaintiff into the top bunk. (*Id*.) However, when Plaintiff tried to get down from the bunk, he fell to the floor, landing on his left wrist, elbow, and back, and also hitting his head on the table leg. (*Id*., PageID.13.) Another prisoner went to get Defendant Frank, who returned to Plaintiff's cube. (*Id*.) Upon hearing that Plaintiff fell, Defendants Frank and Hahn got a wheelchair for Plaintiff and took him to healthcare where he was examined by non-party Nurse Jane Doe #2. (*Id*.) Nurse Jane Doe #2 ordered x-rays and two days of bottom bunk detail and gave Plaintiff a "shot of tortamatall for his back," a wheelchair, and an ace bandage. (*Id.*, PageID.13–14.) At 4:00 p.m., Plaintiff sent a kite to healthcare to get his bottom bunk detail renewed. (*Id*.) The response indicated that Plaintiff was seen for that issue on August 2, 2023. (*Id*., PageID.14.)

On August 3, 2023, Defendant Pace called Plaintiff into his office to sign off on a healthcare kite from July 26, 2023. (*Id*., PageID.15.) At that time, Defendant Pace told Plaintiff that it was "obvious that (Plaintiff's) foot was messed up" and that he did not understand why Plaintiff was moved in the first place. (*Id*.)

On August 4, 2023, Plaintiff was examined by non-party Nurse Jon Doe #4, who provided Plaintiff with an ace bandage and medication, and set a follow up appointment for a week later. (*Id*.) When Plaintiff asked Nurse Jon Doe #4 about his bottom bunk detail, Nurse Jon Doe #4 gave Plaintiff another temporary detail and told Plaintiff that he would need to see his provider. (*Id.*, PageID.16.) Plaintiff eventually received x-rays of his wrist, but not his back or elbow. (*Id.*)

In October 2023, Plaintiff was transferred to a new facility where he never received follow-up medical care. (*Id.*)

In March of 2024, Plaintiff was again transferred. (*Id.*) Plaintiff inquired about his x-rays and was told that x-rays of his back and elbow were never ordered. (*Id.*) Plaintiff claims that the medical treatment at this new facility was also ineffective. (*Id.*, PageID.17.)

As a result of the events described in Plaintiff's complaint, Plaintiff seeks money damages. (*Id.*, PageID.1.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (ECF No. 1, PageID.1.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages. (ECF No. 1, PageID.1.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g., Lapides*,

535 U.S. at 617. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and he fails to state a claim against Defendants in their official capacities upon which relief can be granted.

### B.    Individual Capacity Claims

Plaintiff alleges that Defendants were deliberately indifferent to Plaintiff's condition and serious medical needs. (ECF No. 1, PageID.17.) He claims that Defendants: (1) failed to allow him to remain in bottom bunk and (2) failed to provide him with proper medical care following his fall. The Court will address each of Plaintiff's claims in turn.

#### 1.    Bottom Bunk Assignment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.    Defendant Jane Doe #1

Plaintiff alleges that at his July 21, 2023 medical appointment, Defendant Jane Doe #1 examined Plaintiff and told Plaintiff that she would be renewing Plaintiff's bottom bunk medical detail. (ECF No. 1, PageID.8.) However, KCF staff did not have any record to indicate that Plaintiff's bottom bunk medical detail had been renewed.

Plaintiff's complaint does not provide the Court with any facts as to why staff did not have any record of the medical detail. Importantly, however, there are no facts that would suggest that Defendant Jane Doe #1 purposefully chose not to renew Plaintiff's medical detail. At best,

Plaintiff's complaint suggests that Jane Doe #1 was negligent in intending to renew Plaintiff's medical detail but failing to follow through on that order. However, an Eighth Amendment violation requires a "state of mind more blameworthy than negligence." *See Farmer*, 511 U.S. at 835. Plaintiff's allegations fail to plausibly suggest that Defendant Jane Doe #1 was deliberately indifferent to a serious risk to Plaintiff's safety. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Jane Doe #1.

> **b.    Defendants Hungerford, McKinzy, Jon Doe #2, Jon Doe #3, Gagey, and Pace**

Plaintiff alleges that he had extensive conversation with Defendants Hungerford, McKinzy, Jon Doe #2, Jon Doe #3, and Pace about his medical condition and need for a bottom bunk. Defendant Hungerford told Plaintiff that he "didn't give a shit about Plaintiff's medical condition," (ECF No. 1, PageID.9), while Defendants McKinzy, Jon Doe #2, and Jon Doe #3 told Plaintiff that they believed him, and Defendant Pace told Plaintiff that his condition was "obvious." (*id.*, PageID.10, 15.) Plaintiff further alleges that Defendant Gagey, after being made aware of Plaintiff's medical condition, said that he would email Defendant Pace about the issue of placing Plaintiff in a top bunk. (*Id.*, PageID.10–11.) However, each of the foregoing Defendants required that Plaintiff abide by his new top-bunk assignment.

Taking the alleged facts as true and drawing all reasonable inferences in Plaintiff's favor, the Court can reasonably infer that these Defendants who knew of Plaintiff's foot condition were also aware that forcing Plaintiff to sleep in a top bunk posed excessive risks to Plaintiff's safety. Therefore, the failure of Defendants Hungerford, McKinzy, Jon Doe #2, Jon Doe #3, Gagey, and Pace to ensure that Plaintiff remained in a bottom bunk could amount to deliberate indifference in an Eighth Amendment sense. Plaintiff's Eighth Amendment claims against them cannot be dismissed on screening.

### c.     Defendants Mayrick and Frank

Plaintiff's only allegation against Defendant Mayrick is that Defendant Mayrick retrieved Plaintiff from Plaintiff's bunk and told Plaintiff to report to the control center. (ECF No. 1, PageID.9.) Similarly, as it relates to Plaintiff's bunk assignment, Plaintiff alleges that Defendant Frank did nothing more than call, "5 minutes till [sic] count." (*Id.*, PageID.12.) Plaintiff's complaint does not suggest that either Defendant was aware of Plaintiff's need for a bottom bunk assignment, much less that these Defendants took any action against Plaintiff that could have amounted to a violation of Plaintiff's Eighth Amendment rights. The Court will dismiss Plaintiff's claim against Defendants Mayrick and Frank.

### 2.     Medical Care Following the Fall

Plaintiff alleges that upon learning that Plaintiff fell from his bunk, Defendants Frank and Hahn got a wheelchair for Plaintiff and took him to healthcare. (*Id.*, PageID.12.) Plaintiff was then examined by non-party Nurse Jane Doe #2, who ordered x-rays and a temporary bottom bunk detail, and provided Plaintiff with medical treatment. (*Id.*, PageID.12.) On August 4, 2023, Plaintiff was again examined by non-party Nurse Jon Doe #4, who provided Plaintiff with an ace bandage, medication, and a temporary bottom bunk detail, and set a follow up appointment for a week later. (*Id.*, PageID.15.) Plaintiff complains that he received x-rays of his wrist, but not his back or elbow. (*Id.*, PageID.16.) He also complains that he did not receive follow-up medical care following his transfer to a new facility. (*Id.*)

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *see Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

First, as to Defendants Frank and Hahn, assuming that Plaintiff suffered from a serious medical condition, Plaintiff's allegations do not suggest that these Defendants were deliberately indifferent to Plaintiff's need for care. Instead, Plaintiff's own allegations plausibly suggest that Defendants Frank and Hahn exercised due care, responding appropriately to Plaintiff's needs by immediately securing a wheelchair and taking Plaintiff to healthcare for medical attention. Any Eighth Amendment claims against Defendants Frank and Hahn will be dismissed for failure to state a claim.

Second, as to Plaintiff's remaining complaints regarding his medical care and treatment following his fall, as with any § 1983 claim, "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 676. Thus, it remains Plaintiff's obligation to attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544. Plaintiff has not met that burden.

Plaintiff does not allege any facts that would plausibly suggest that any of the named Defendants were otherwise involved in Plaintiff's medical care following his fall from the top bunk, let alone that the named Defendants were deliberately indifferent to Plaintiff's medical needs. Thus, to the extent alleged, Plaintiff fails to state an Eighth Amendment claim related to his medical care following his fall.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants Jane Doe #1, Mayrick, Frank, and Hahn will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Hungerford, McKinzy, Jon Doe #2, Jon Doe #3, Gagey, and Pace: Plaintiff's official capacity claims and Plaintiff's Eighth Amendment claims

related to the provision of medical care following Plaintiff's fall. Plaintiff's Eighth Amendment claims against Defendants Hungerford, McKinzy, Jon Doe #2, Jon Doe #3, Gagey, and Pace for deliberate indifference to Plaintiff's need for a bottom bunk assignment remain in the case.

An Order consistent with this Opinion will be entered.


Dated:  _____May 19, 2025_____         ____/s/ Jane M. Beckering_____
                                                 Jane M. Beckering
                                                 United States District Judge